Good morning, Your Honor. Frank Sanchez here, Mr. Martinez-Alcazar. I'd like to reserve two minutes for rebuttal, if I can. Your Honor, in this particular case, Mr. Martinez-Alcazar was tried in the district court and he was convicted for basically drug smuggling, the border bust. Our issue is obviously the 404B evidence that the district court allowed to be brought in and presented to the jury. Moreover, our position is that the evidence that was brought in did not go through the proper 403 analysis, which is basically that it would be prejudicial. Quite frankly, the concern that we have is that the 404B evidence itself was not used to prove knowledge, intent, and so on. It was used specifically to indicate that this man had a pattern of alien smuggling. In fact, the prosecutor in her closing argument basically said, lightning does not strike twice. That is in no way, in no other way to interpret that. It is character evidence. He's a smuggler once, he's back, and he did it again. Now, the charge that we're talking about is the 2003 stop in Arkansas where approximately $300,000 in cash or currency was taken off Mr. Martinez-Alcazar and his wife. That money itself was turned over to law enforcement authorities. And during cross-examination of the officer from Arkansas that the governor was so kind to bring down, he indicated that Mr. Martinez nor his wife, neither one of them were charged, prosecuted, convicted, nothing. Essentially, they said they had no knowledge of the money, the money was taken off of them, and that was it. Some 10 years later, apparently now that is relevant in order for them to present it to this jury in this particular case. So it seems to me that what wasn't relevant once before, or what was weak once before, now is relevant in this particular case. Well, that's the nature of human experience. Two things that seem weak in and of themselves tend to reinforce each other. That may be so, Your Honor. If you have sort of a bizarre kind of experience once, it's maybe just an accident. If you do it twice, if it happens twice, then maybe it's a pattern. That's the... So it isn't... But shouldn't a person, this court has continuously emphasized that a person should be convicted or should be charged for what they did, not for who they are. Again and again, it's said that throughout. That's the common thread in these types of cases. Now, in this particular case, they had... No, but it's not who they are. I mean, if you do this twice and you say, oh, it was a mistake, I had no idea what was going on, maybe you are lying both times. Well, Your Honor, did he do it twice? The first time, essentially, he was stopped and money was relieved. There was no admission of wrongdoing. In cases cited by the government in their brief, they refer to an SEC filing, an SEC complaint in one of their cases, where ultimately the court said, hey, that SEC filing itself is just a complaint. It means nothing. There's no admission of wrongdoing. There was no admission of wrongdoing by Mr. Martinez-Algazar in 2003. In fact, he happily gave up the money. Notwithstanding, 10 years later, now it's being used to, as I said in this case, was basically to dirty him up in order for us not to have a fair shake at a trial. Ultimately, what it came down to is we went through the mechanics of a trial, but in the end... I guess I'm just not understanding your argument. This incident happens 10 years earlier. Yes. And he gives up a significant amount of money, right? That is correct. Staken from him. So this is not one of those things where it's sort of trivial and he says, oh, you know. He gives it up, and he's found with this money. He gives it up, and he doesn't then get any criminal punishment for it, maybe for whatever reason. And the claim is, well, I didn't know. And then he does it again or something very similar again later. You say, well, maybe you really was not an accident. Maybe you really did know because, you know, most people don't even happen to get stopped once in their life with $300,000 in cash. I'm willing to bet that there isn't a single person in this courtroom who has been stopped with $300,000 in cash. Don't answer the question. I'm just taking a guess. I can tell you with some assurance. I have never had been in the presence of $300,000 in cash. You know, so there's no degree of accident that could happen to me that would, you know. So why when that happens, something like that happens to you twice, doesn't the old saying, you know, come in, you know, fool me once, shame on you, fool me twice. You don't know this saying, right? Yes. Doesn't that make perfect sense? Respectfully, Your Honor, no, because he disavowed knowledge completely like he did in Arkansas. He said, I didn't know. This wasn't mine. I purchased a vehicle and ultimately. Well, yeah, he can say that. He can say that. And, of course, that's what he would say. He's not going to say, yes, I'm guilty, you know, here, take me, you know. He'll say, yes, and, you know, they let him get away with it. They took the money, and they decided not to pursue criminal charges for whatever reason. Maybe they didn't think they could prove it or whatever. But when it happens again, at that point, you say, well, maybe you really were lying the first time. But there's a cautious, a cautious tilt. It's not a question of character. It's not a question of who you are. It's a question of your conduct. But the court, this court has consistently emphasized that there's a danger to bringing that type of evidence, because the court, the jury is going to ignore the evidence of 2013 and think, hey, wait a minute. He got away with it once. We can't let him get away with it again. And ultimately, he's going to hold his feet to the fire, no matter how weak the evidence in the 2013 case is. They brought it in for one sole purpose, by admission and closing argument, because lightning doesn't strike twice. That is propensity evidence. Why is it propensity evidence? Because essentially what they're telling the jury is this 2013 case can't stand on its own merits. We need that 2003 case, because essentially this gentleman got away with a $300,000 smuggling event. And now here we are again. Yeah, that's true. But why is that propensity evidence? It's not propensity. It's conduct evidence. It's, you know, you did something. You got away with it. And now we're going to bring it back and tell the jury. So if they have any doubt about whether this is an accident, just consider the fact that 10 years earlier, something bizarre like that, something that never happened to any of you people in the jury box, happened to him. But the argument should be contained to plan and plan, intent. Come plan. But didn't it go to knowledge? Absence of mistake. Correct. All the things that this Court has consistently emphasized. So why wasn't it relevant? It went to knowledge, didn't it? I mean, they argued it as the knowledge of a secret compartment in the car. They did in the first portion of their closing argument. Then in rebuttal when they go, when they, in my humble opinion, they step on the line or cross over the line, and then they talk about lightning striking twice. At that point. That was the rebuttal? That is correct. Was it done by the same attorney as who did the first part of the closing argument? Yes, Your Honor. Okay. So I think at that point, that's when they're using that evidence for what this Court has consistently said they shouldn't be using it for. And, Your Honor, I believe I'm out of time. Thank you, counsel. May it please the Court. Benjamin Hawley for the United States. The evidence was properly admitted here because it did not go to character. It instead was introduced to prove knowledge and absence of mistake. The reason, the way it proves that, the logical link between those, is that having a sophisticated compartment in a recently purchased vehicle, particularly one that's filled with hundreds of thousands of dollars worth of items, is sufficiently unusual that the jury could reason that even if it was a mistake the first time, it probably wasn't the second time. Now, that doesn't go to character. And, importantly, that evidence is not enough. We never argued before that it was enough in and of itself to show that the defendant knew of the compartment. But it was some evidence. It was relevant to it. It made it more likely that he knew of the compartment. The argument that it was too remote in time was over a decade before the second incident, wasn't it? It was. It was 10 years and one month exactly. Doesn't it seem quite remote in time? No, Your Honor, or at least not sufficiently to exclude the evidence for two reasons. One is that this Court has held the more similar the acts are, the less the time matters. Yeah, but one, the Arkansas Act was about money. Right. This was about drugs. Well, and the important link, the part that made it relevant was that it was a sophisticated compartment. What was in there was- A sophisticated compartment? I've been wondering, what is a sophisticated compartment? That it took a long time to create. So how do we know that? Well, so for the current case, we had the auto expert testify that it would take 10 to 12 hours to create this compartment. And then it would take several hours. In fact, it did take several hours to get back to the compartment and take out what was inside. In the 2003 case, the trooper testified he looked for it and was only able to find essentially part of or one of the compartments, which was you had to remove the seat, rip up the flooring, and then you could find the compartment. And they had to take it to a mechanic to actually find where the money was hidden. So it's not just that the money is back in the car or behind a seat or even in a seat. It's well hidden in both scenarios. And also on the timing point, this Court has previously upheld longer gaps of time, about 13 years, in cases that have about the same level of similarity or possibly even less. Johnson is the primary case in that regard, where the prior was potentially highly prejudicial. It involved sexual abuse and attempted sexual abuse of a minor 13 years before. That also, in that case, was not charged or convicted. In fact, this Court has upheld the introduction of evidence where the person went to trial on the prior act and found not guilty. And they used that evidence in the new case. Did the district court conduct a 403 analysis, too? Yes, Your Honor. That's at page 49 of the record. That was during the motion and lemonade hearing. I believe it was the day before the trial started. And the court held that it was, that the prior act was prejudicial in that it showed that he was guilty, but it was not unfairly prejudicial. It wasn't particularly nefarious. And that the probative value was present and therefore not substantially outweighed. And if I remember correctly, there was a curative instruction? There was. The United States, in its motions and lemonade, suggested the curative instruction. The parties agreed to it, and it was given. Unless the Court has any further questions. Thank you. Thank you, counsel. This week, Your Honor, as a follow-up to Mr. Hawley's statement regarding the compartment itself, in 2013, the drugs were hidden in the pumpkin, if you will, the rear transmission of the vehicle. So it took several hours to have that taken apart so they could find the 7 1⁄2 kilos of heroin. In 2003, the trooper basically pulled back the carpet on the floorboard and was able to examine it right there. He was able to see it. The reason that the vehicle itself was later dismantled to another yard is obviously he was not going to engage in a full-blown search on the side of the road. In 2003, it was an interstate on the side of the road, and these people were stopped for speeding. So you're arguing that it wasn't all that similar of a compartment. It was not, no. Exactly, Your Honor. In the two cases of the government sites, Vaux and Ross, we're talking about the exact same conduct. In Vaux, it was essentially that the gentleman at that time was being charged with a drug case, a conspiracy case, a drug case. So they brought in the fact that he had engaged in prior drug sales. And Ross, essentially a gentleman that was being charged and convicted for a securities fraud, said, hey, you know, they used his wife's prior signature. So it was the exact same type of conduct. Yes, it was more than 10 years apart, but it was the exact same conduct. Here we have two completely different set of facts. That's our onus, if you will. Thank you, counsel. Thank you, Your Honor. The case is adjourned. You will be submitted. Yes, Your Honor.
judges: Reinhardt, Kozinski, Wardlaw